**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| **NADEYAH JONES**, individually, and on behalf of others similarly situated, | : | Case No: |
| | : | |
| Plaintiff, | : | Hon. |
| | : | |
| v. | : | Mag. |
| | : | |
| **CARECENTRIX INC.**, a corporation, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Nadeyah Jones ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant CareCentrix, Inc. ("Defendant"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2.      According to Defendant's website, Defendant is a single platform that "connect[s] the last mile of care[] for health plans and health systems to improve outcomes, lower total cost of care, deliver member and provider satisfaction, enhance Stars and HEDIS® measures[1], and guarantee savings." [1] Defendant's "solutions include "Post Acute Care: Site Optimization, Readmissions Management, Home Health, DME, Home Infusion, Home Sleep & Respiratory, and

---

[1] https://www.carecentrix.com/about-us/ (last visited Aug. 8, 2023).

Serious Illness Care at Home." *Id.*

3.      In providing the aforementioned services, Defendant employed customer service representatives in remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Patient Advocate, to refer to its customer service representatives (collectively referred to herein as "CSRs"). Defendant heavily relied on CSRs to receive and respond to calls from providers, referral sources and potential patients, and make outbound calls to patients and hospitals.

4.      Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

5.      Defendant employed Plaintiff as an hourly call center employee with the job title of CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-

---

[2]  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf* (last visited Aug. 8, 2023).

shift and post-shift job-related activities, must be kept." *Id.*

9.      Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts when they were not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime and in non-overtime workweeks, for regular hours.

10.      More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking in to Defendant's timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each day.

11.      Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.      At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.    Defendant' annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.    This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.    This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Connecticut, employs individuals within the state of Connecticut, is registered with the state of Connecticut, and maintains its principal place of business in the state of Connecticut.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs CSRs in this district, conducts business in this district, and a substantial portion of the events that give rise to Plaintiff's clams occurred in this district.

## **PARTIES**

19.    Plaintiff Nadeyah Jones is a resident of McDonough, Georgia and worked remotely for Defendant as an hourly, non-exempt CSR from approximately November 2022 to June 22, 2023. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $17.00 per hour. Plaintiff Jones signed a consent to join this collective action, which is attached as **Exhibit A**.

20.    Additional Opt-In Plaintiffs were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

21.    Defendant CareCentrix, Inc. is a Delaware corporation (File No. 2946167) headquartered in Hartford, Connecticut. In the state of Connecticut, Defendant has a registered agent for service of process listed as Corporation Service Company, Goodwin Square 225 Asylum Street, 20th Floor, Hartford, Connecticut 06103.

## GENERAL ALLEGATIONS

22.    Defendant paid its CSRs at varying hourly rates.

23.    Defendant's CSRs typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

24.    While Defendant has access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

25.    Prior to being hired, Defendant provided prospective CSRs with a written offer setting forth the job requirements and an offered rate of pay.

26.    Defendant maintains documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or other payroll records.

27.    Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

28.    In addition to the base rate of pay, Defendant incorporated various types of routine and non-discretionary bonuses and shift differentials, where applicable, into its compensation structure. For example, Defendant promised its CSRs sign on bonuses and other forms of

remuneration, including a "Csc Bonus."

29.    Plaintiff performed under the contract with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff acted as the first point of contact for patients needing home healthcare services, receiving and responding to calls from providers, referral sources and potential patients, collecting and entering clinical and demographic information, and making outbound calls to patients and hospitals. The aforementioned customer service was provided over-the-phone and Plaintiff would utilize Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

30.    Defendant provided training to CSRs, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that all of Defendant's CSRs received was substantially, if not entirely, the same.

31.    At all relevant times, Defendant controlled Plaintiff and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

32.    In order to perform their job duties, Plaintiff and Defendant's CSRs required a computer and a variety of essential and indispensable computer programs, applications, and servers.

33.    Plaintiff and other similarly situated CSRs were instructed to be call ready the moment their scheduled shift started. This required Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shift began. During the boot-up

and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

34.     Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the CSRs' clock in times in relation to their start of shift time, as well as the time the CSRs went into a "ready" status. Defendant also maintained an overtime policy that prohibited CSRs from working overtime unless it was pre-approved. Defendant enforced these policies and procedures by providing CSRs with monthly incentives to reach and maintain Defendant's metrics and scoring guidelines, and routinely evaluating, and at times disciplining, CSRs for not meeting Defendant's expectations. This discipline included, but was not limited to, supervisor coaching, verbal warnings and termination.

35.     All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the CSRs' work and they could not perform their jobs without them.

36.     Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

37.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

38.     The pre- and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into and shutting down their computers and applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

7

39.     As a result of the pre- and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately nine (9) to twelve (12) minutes of compensation every day.

40.     At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with their CSRs.

41.     Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

42.     Despite knowing Plaintiff and all other CSRs performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

43.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

44.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other CSRs experienced technical issues.

45.     Because Defendant required its CSRs, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

### A. **Pre-Shift Off-the-Clock Work**

46.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to begin work prior to the start of their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including logging into multiple computer networks, software programs and applications. Defendant's CSRs only received compensation *after* this pre-shift work was completed, though they were required to perform this work in order to be fully ready to take and/or make calls when their scheduled shifts began.

47.     The off-the-clock pre-shift process took substantial time on a daily basis, approximately seven (7) to ten (10) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks:

   a. Turn on their computer;

   b. Log into Microsoft Windows using a password;

   c. Secure access to Defendant's server via Global Connect, the Virtual Private Network or "VPN", using a dual-authentication process through which they obtained a code and entered it into their cell phone authenticator application;

   d. Log into Defendant's Interactive Desktop by identifying the VPN and following various prompts;

   e. Open Google Chrome;

   f. Open and log into ADP, Defendant's timekeeping system;

   g. Open Microsoft Teams, Defendant's application for internal communications with other CSRs, team leads and supervisors;

   h. Log into Salesforce, Defendant's application CSRs used to input patient information and obtain patient case files;

   i. Log into Intake98 (Defendant's application CSRs used to verify and obtain patient phone information) using a username and password;

   j. Log into Que Manager (a second application CSRs used to verify and obtain patient phone information) using a username and password;

k.  Log into 834 Report (a third application CSRs used to verify and obtain patient phone information) using a username and password;

l.  Log into Envolve (a fourth application CSRs used to verify and obtain patient phone information) using a username and password;

m.  Log into Wellcare, a fifth application CSRs used to verify and obtain patient phone information;

n.  Open log into Bamboo Health (Defendant's application for accessing patient information) using a username and password;

o.  Open Microsoft Outlook, the application Defendant's CSRs used to receive and review internal company emails, information from managers and updates on team meetings; and

p.  Clock into the timekeeping system.

48.    Defendant's CSRs had to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to arrive to work approximately seven (7) to ten (10) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

49.    Defendant's CSRs were not compensated for all of this time because Defendant prohibited CSRs from clocking into its timekeeping software before the start of their scheduled shift.

50.    The pre-shift off-the-clock work CSRs performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as CSRs.

**B.  Post-Shift Off-the Clock Work**

51.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to clock-out the moment their shift ended or as soon as they were done fielding their last customer query for the day and *before* closing all work applications and systems. In the instances when CSRs fielded calls after their scheduled shift concluded, CSRs were required to

advise their team leads of the circumstances and obtain approval for fielding the call after the end of the shift.

52.    After they clocked out for the day, CSRs, including Plaintiff, were forced to shut-down/log-out of the various computer programs and software applications they utilized in performing their job duties. This resulted in Plaintiff and other CSRs performing an additional two (2) minutes of off-the-clock work every day.

53.    The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

### C.    The Off-the-Clock Work Results in Viable "Gap Time" Claims

54.    Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA).

55.    Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

56.    During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

### D.    Plaintiff's Exemplary Workweek

57.    Defendant paid its CSRs on a biweekly basis. The FLSA and regular wage

violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystub for the pay period of June 3, 2023 – June 16, 2023:

- Plaintiff worked less than 40 hours in one week at a rate of $17.00 per hour and upon information and belief was paid $17.00 for each regular hour worked.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional nine (9) to twelve (12) minutes or more at her regular rate of $17.00 for each regular hour worked.

- Plaintiff worked more than 40 hours in one week at a rate of $17.00 per hour and upon information and belief was paid $25.50 per hour in overtime.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional nine (9) to twelve (12) minutes or more at her overtime rate of $25.50 for each hour worked in excess of 40 in the overtime workweek.

**Exhibit B**, Jones Exemplary Pay Statement.

### E. __The Regular Rate of Pay__

58.    Under the FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

59.    No matter how an employee is paid – whether by the hour, by the piece, on a commission, or on a salary – the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

60.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendant carries the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's CSRs for work performed are included in the base calculation unless specifically excluded by statute.

61.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, Defendant imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

62.     Plaintiff's "total remuneration" included not only her base hourly pay, but also non-discretionary bonuses and shift differentials, where applicable. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

63.     Defendant's non-discretionary bonuses and other remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

64.     The U.S. Supreme Court has held that shift differential pay cannot be mislabeled as an overtime premium. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 466 (1948) ("a mere higher rate paid as a job differential or as a shift differential, or for Sunday or holiday work, is not an overtime premium.").

65.     Likewise, "[u]nder regulation § 778.211, attendance bonuses and bonuses announced to induce employees to work more steadily or efficiently must be included in the employee's regular rate of pay." *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 977 (8th Cir. 2006).

**F.  Defendant Failed to Calculate the Regular Rate of Pay**

66.     Despite the well-established law on this issue, Defendant failed to incorporate non-discretionary bonuses and shift differentials, where applicable, into its CSRs' regular rate calculations, resulting in *prima facie* violations of the FLSA.

67.     As a result, Plaintiff and those similarly situated have regularly worked in excess of forty (40) hours a week and have been paid some overtime for those hours but at a rate that does not include Defendant's non-discretionary bonuses and shift differentials as required by the FLSA.

68.     To the extent that any of Defendant's premium compensation paid to Plaintiff, and those similarly situated, could be qualified and applied as a credit under 29 U.S.C. §§ 207(7)(h), those credits may only be applied to the same workweek or work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc.*, 308 F. 3d 580, 590-92 (6th Cir. 2002).

69.     In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (FLSA), 1985 WL 304329 at 3 (1985).

70.     As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

## COLLECTIVE ACTION ALLEGATIONS

71.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

72.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

73.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

74.     Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein. Plaintiff and the proposed FLSA Collective were also eligible for and received non-discretionary bonuses and shift differentials, where applicable, but such pay was not calculated as part of their regular rate as required by the FLSA.

75.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the

proposed FLSA Collective performed.

76.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek, and to include non-discretionary bonuses and other forms of remuneration in the FLSA Collective members' regular rate calculation.

77.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

       a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

       b.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

       c.  Willfully failing to include all remuneration in the regular rate of pay for Plaintiff and the members of the FLSA Collective; and

       d.  Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

78.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

79.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan;

(d) their claims are based upon the same factual and legal theories; and (e) they were eligible for and received non-discretionary bonuses and other forms of remuneration that were not included in their regular rate as required by the FLSA.

80.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members 1) are required to work without compensation due to uncompensated boot up and log out time; 2) are entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week; and 3) were paid a regular and resulting overtime rate that did not include all forms of remuneration, including, but not limited to, non-discretionary bonuses.

81.    Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

82.    Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated CSRs in the same or similar manner regardless of job title or work location.

83.    The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

85.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

86.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

   a.   Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

   b.   Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

   c.   Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

   d.   Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

87.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she

and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

88.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

89.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

90.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

91.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

92.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the

Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

93.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

94.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

95.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

96.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

97.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

98.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

99.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

100.    The FLSA and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendant's non-discretionary bonuses and shift differentials, where applicable, do not fall into any of those exceptions.

101.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

102.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

103.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

104.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was not significant.

105.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

106.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the

FLSA.

107.    At all times relevant to this action, Defendant failed to include non-discretionary bonuses and other forms of remuneration into the regular rate of pay for Plaintiff and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA because Defendant's CSRs worked overtime without being paid the statutorily required rates. 29 U.S.C. § 207(a).

108.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, and properly calculated their regular rate, but did not.

109.    Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

110.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including backpay, unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

111.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further

alleges as follows.

112.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

113.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

114.    For example, Defendant offered to compensate Plaintiff at a minimum of $17.00 per hour if she agreed to perform services for Defendant as a CSR.

115.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

116.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $17.00 per hour within the applicable period.

117.    By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, pre-agreed upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with

Plaintiff and each member of the Rule 23 Nationwide Class.

118.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

119.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

120.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

121.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

122.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

123.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

124.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

125.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

126.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

127.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

128.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

129.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

130.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

131.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

132.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

d. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e. An Order declaring Defendant violated the FLSA;

f. An Order declaring Defendant's violations of the FLSA were willful;

g. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre- and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

i. An Order compelling a complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

j. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

k. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

26

l.   An Order awarding such other and further relief as this Court deems appropriate.

Dated: August 10, 2023                     Respectfully Submitted,

*/s/ Jeffrey S. Morneau*
Jeffrey S. Morneau
CONNOR & MORNEAU, LLP
273 State Street #2
Springfield, MA 01103
Telephone: 413-455-1730
jmorneau@cmolawyers.com

Kevin J. Stoops
Alana A. Karbal
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

## JURY DEMAND

Plaintiff, Nadeyah Jones, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 10, 2023                     Respectfully Submitted,

*/s/ **Jeffrey S. Morneau***
Jeffrey S. Morneau
CONNOR & MORNEAU, LLP
273 State Street #2
Springfield, MA 01103
Telephone: 413-455-1730
jmorneau@cmolawyers.com

Kevin J. Stoops
Alana A. Karbal
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*