# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Defendant, CareCentrix, Inc. (hereinafter, "Defendant") and all related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and any entity in which Defendant has a controlling interest, any entity that is controlled by Defendant, and their respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents ), Plaintiff Nadeyah Jones on behalf of herself and all putative collective members, and Plaintiffs Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts (who, together with Nadeyah Jones and all putative collective members, are referred to as "Plaintiffs").   Hereinafter, Plaintiffs and Defendant are referred to collectively as the "Parties" or individually as a "Party."

WHEREAS, on August 10, 2023, Plaintiffs filed a lawsuit against Defendant in the United States District Court for the District of Connecticut, identified as *Jones v. CareCentrix, Inc.,* Case No. 3:23-cv-01071 (the "Lawsuit"). The Lawsuit is assigned to the Honorable Victor A. Bolden in the U.S. District Court for the District of Connecticut (the "Court").

WHEREAS, in the Lawsuit, Plaintiffs allege that Defendant failed to pay proper overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

WHEREAS, Defendant expressly denies and continues to deny the allegations contained in Plaintiffs' Lawsuit or that it violated any federal, state or local law, breached any duty, failed to pay any employees as required by law, or engaged in any other unlawful conduct with respect to any of its employees. Nevertheless, Defendant desires to settle the Lawsuit finally on the terms

and conditions set forth in this Agreement.

WHEREAS, the Parties agree that *bona fide* disputes exist between them, including, *inter alia*, whether Defendant violated the FLSA; whether the alleged unpaid work performed by Plaintiffs was compensable under the FLSA such that Plaintiffs are entitled to overtime compensation; the amount of time Plaintiffs spent performing the alleged unpaid work and whether it was *de minimis*; and whether this case can be maintained as a collective action. Moreover, while Defendant contends that Plaintiffs could not succeed on the merits of their claims, even if they could, the Parties also dispute whether Defendant has a good faith defense that would preclude an award of liquidated damages, and whether Defendant's conduct was willful, and thus, whether the two-year or three-year statute of limitations applies under the FLSA.

WHEREAS, prior to negotiating the settlement reflected in this Agreement, the Parties engaged in informal discovery, which included the production of payroll and pay records for Plaintiffs and an analysis of Plaintiffs' alleged wage damages.

WHEREAS, the Parties were scheduled to attend a mediation on April 16, 2025, with experienced mediator, Dennis Clifford, Esq., but in preparing for the mediation, the Parties were able to reach a resolution of the matter as a collective action.

WHEREAS, the Parties have agreed to resolve the claims alleged in the Lawsuit by entering into this Agreement and by dismissing the Lawsuit with prejudice (as provided herein).

WHEREAS, the Parties were each represented by attorneys throughout the negotiations that culminated in the settlement and this Agreement, and said attorneys are experienced in handling collective actions arising under the FLSA.

WHEREAS, the Parties agree and acknowledge that this Agreement represents a fair and reasonable compromise of Plaintiffs' claims, which the Parties recognize would otherwise require extensive litigation to determine.

WHEREAS, the Parties agree that this Agreement is based upon the exchange of good and valuable consideration between them as set forth more fully herein, the adequacy or sufficiency of which is hereby acknowledged by all Parties.

NOW, THEREFORE, in sole consideration for the promises and covenants set forth herein, the Parties agree as follows:

**A.    <u>Definitions</u>**

1.      "Additional Opt-in Plaintiffs" means Opt-in Plaintiffs Josephine Fulce, Anthony Johnson, Katiria Mercado, Tamisha McKinnon, Charronda Mosley, Shaiteryia Roberts, Nolicia Strong, Sheila Tucker, Brittany Walker, Gary Taylor and Brianna Scott who are not Collective Members but who executed and timely filed with the Court a consent form to join the Lawsuit.

2.      "Administration Period" means the one hundred eighty (180) day period after the Settlement Notice Packets are mailed.

3.      "Approval Order" means the order entered by the Court approving this Agreement.

4.      "Attorney's Fees and Costs" means the amount paid to Plaintiffs' counsel as attorneys' fees and litigation expenses.

5.      "Collective Members" means the 44 current or former Patient Advocates who were employed by CareCentrix at any time during the Collective Period and executed and timely filed with the Court a consent form to join the Lawsuit.

6.      "Collective Period" means the time period from October 4, 2021 through October 4, 2024.

7.      "Effective Date" means the date upon which this Agreement is fully executed by all Parties.

8.      "Eligible Employee" means the 11 Additional Opt-in Plaintiffs and the 44 Collective Members who will receive an Individual Settlement Payment under this Agreement.

9.      "Gross Settlement Amount" means the total amount of monies Defendant will pay to the Named Plaintiff, the Eligible Employees, and Plaintiffs' counsel.

10.      "Incentive Awards" mean the amounts paid to four (4) Opt-in Plaintiffs Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts, in addition to any Individual Settlement Payments.

11.      "Individual Settlement Payment" means the payment to each Participating Plaintiff via a settlement check pursuant to the terms of this Agreement and the Approval Order.

12.      "Net Settlement Amount" means the total amount of monies available to calculate Individual Settlement Payment after subtracting the Service Award, Incentive Awards, Plaintiffs' Attorney's Fees and Costs, and settlement administration expenses from the Gross Settlement Amount.

13.      "Participating Plaintiff" means an Eligible Employee who cashes or otherwise negotiates his or her Individual Settlement Payment and releases his or her claims against Defendant.

14.     "Relevant Period" means the period of time covered for purposes of calculating Individual Settlement Payments and also the period of time for which the release is applicable, which is October 4, 2021 through the Effective Date.

15.     "Service Award" means the amount paid to the Named Plaintiff, Nadeyah Jones, in addition to any Individual Settlement Payments.

16.     "Settlement Administrator" means the third-party entity Plaintiff retains to perform the duties necessary to send the Settlement Notice and Individual Settlement Payments to each Eligible Employee.

17.     "Settlement Notice" means the written notification that each Eligible Employee will receive which explains the settlement and their right to participate, a draft copy of which is attached as **Exhibit A**.

18.     "Settlement Notice Packet" means the mailing the Settlement Administrator will send to each Eligible Employee containing the Settlement Notice and an Individual Settlement Payment.

**B.     Defendant's Payment Obligations**

1.     <u>Gross Settlement Amount</u>.   In consideration for the dismissal with prejudice of the Lawsuit as well as the release of claims effected by this Agreement and other good and valuable consideration, Defendant shall pay a maximum of One Hundred Twenty Thousand Dollars and No Cents ($120,000.00) to settle the Lawsuit. Subject to the terms of this Agreement, the Gross Settlement Amount is inclusive of payment for: (a) all Eligible Employees, or their respective authorized legal representatives; (b) the Service Award ~~and general release~~ payment approved by the Court for the Named Plaintiff; (c) the Incentive Awards ~~and general release~~ payments approved

5

by the Court for Opt-in Plaintiffs Walker, Fulce, McKinnon, and Roberts; (d) all Attorneys' Fees and Costs approved by the Court, including those in connection with securing Court approval of this Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Agreement; (e) settlement administration expenses approved by the Court; and (f) the Participating Plaintiffs' share of applicable federal, state and local taxes required to be withheld by Defendant. The Gross Settlement Amount shall be the maximum amount that Defendant or the Released Parties (as defined below) are required to pay to settle the Action and assumes 100% of the Eligible Employees cash or otherwise negotiate their checks and become Participating Plaintiffs.

        2.    <u>Settlement Administrator and Employer's Withholdings</u>. Plaintiffs will also be responsible for the fees and costs incurred by the Settlement Administrator (estimated to not exceed $3,000). Defendant will be responsible for payroll tax obligations and/or the employer's share of taxes for settlement purposes distributed to Participating Plaintiffs in addition to the Gross Settlement Amount.

**C.**    <u>**Timing of Payments**</u>

        1.    Within fourteen (14) calendar days of the date of the later of the receipt of the Approval Order of the Settlement and a completed Form W-9 from the Settlement Administrator, the Defendant shall pay the Gross Settlement Amount to the Settlement Administrator. Within fourteen (14) calendar days after receipt by the Settlement Administrator of the Gross Settlement Amount, the Settlement Administrator shall be authorized to pay under its tax identification number:

      a.   any approved Service Award to the Named Plaintiff and Incentive Awards Opt-in Plaintiffs Walker, Fulce, McKinnon, and Roberts by First Class U.S. Mail; and

      b.   the Attorneys' Fees and Costs to Plaintiffs' counsel, Sommers Schwartz, P.C., via wire transfer.

**D.**      <u>**Settlement Administration**</u>

      1.    <u>Selection of Settlement Administrator</u>. The Settlement Administrator shall be selected by Plaintiffs, subject to approval by Defendant, the selection of which shall not be unreasonably withheld.

      2.    <u>Settlement Administrator Responsibilities</u>.   The Settlement Administrator shall be responsible for: (a) determining tax withholding amounts for the Eligible Employees, based on the Individual Settlement Payments; (b) preparing, printing, and disseminating the Settlement Notice Packet by U.S. First Class Mail (including the Settlement Notice and the Individual Settlement Payments) and paying under its tax identification number the Service Awards, Individual Settlement Payments, Incentive Awards, and Attorney Fees and Costs (including the costs for the Settlement Administrator) as approved by the Court; (c) copying counsel for all Parties on material correspondence and promptly notifying Plaintiffs' counsel of any material requests or communications made by any Eligible Employees who receive the Settlement Notice; (d) withholding and paying all payroll tax obligations of Participating Plaintiffs and notifying Defendant of the employer's share of payroll tax obligations in accordance with this Agreement; (e) issuing W-2 and 1099 Forms, as applicable, for all amounts paid to Participating Plaintiffs, Named Plaintiff, and Plaintiffs' counsel; (f) ascertaining current address and addressee

7

information for each Settlement Notice Packet returned as undeliverable or for which it receives notice that a mailed Settlement Notice Packet was otherwise not delivered; (g) referring to Plaintiffs' counsel all inquiries by the Eligible Employees which the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Administrator's duties specified herein; (h) responding to inquiries of the Plaintiffs' and Defendant's counsel; (i) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (j) maintaining adequate records of its activities, including the date of the mailing of the Settlement Notice Packets and receipt of negotiated checks, returned mail, and other communications and attempted written or electronic communications with the Eligible Employees; (k) confirming in writing to Plaintiffs' and Defendant's counsel its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (l) completing a declaration identifying all Eligible Employees, including the Named Plaintiff, who cash a Settlement Check, and providing a copy of the endorsed and deposited Settlement Check(s) to the counsel of the Parties, who may file same with the Court and said checks shall act as a consent to join the settlement and release of liability as to Defendant and the Released Parties; (m) timely responding to communications from the Parties or their counsel; (n) issuing unclaimed (retained) funds to a *cy pres* mutually designated by the Parties within thirty (30) calendar days of the end of the Administration Period; and (o) such other tasks as the Parties mutually agree.

3.  Reporting by Settlement Claims Administrator. Throughout the Administration Period, the Settlement Administrator will provide reports to the Parties every fourteen (14) calendar days or upon request by either Party, the status of the distribution of the Settlement Notice

Packets to Eligible Employees, the receipt by the Settlement Administrator of endorsed settlement checks, or a report on any other aspect of the claims administration process.

E.    **Creation and Implementation of a Qualified Settlement Fund**

1.    Establishing the Qualified Settlement Fund.    Funds paid by Defendant pursuant to this agreement shall be deposited in an account established by the Settlement Administrator (the "Qualified Settlement Fund"), which shall be a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq.    The Qualified Settlement Fund shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

2.    Administering the Qualified Settlement Fund.    The Settlement Administrator shall serve as Trustee of the Qualified Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Qualified Settlement Fund, including the handling of tax-related issues and payments. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

3.    Tax Withholding and Reporting.    The Settlement Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes from the wage payments of each Participating Plaintiff. The Settlement Administrator shall also be responsible for calculating and timely notifying Defendant of the employer's share of payroll taxes or contributions (*i.e.* FICA, FUTA, SUTA, and Medicare) relating to the wage payments of each Named Plaintiff and Participating Plaintiff, which will be paid separately to the Settlement Administrator by Defendant. Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts

9

designated as liquidated damages shall not be subject to withholding and shall be reported to the IRS on Form 1099 by the Settlement Administrator.

4. <u>Communication with Counsel</u>. Defendant's counsel and Plaintiffs' counsel are authorized to communicate directly with the Settlement Administrator to expedite the settlement administration process.

**F.     <u>Allocation of the Gross Settlement Amount</u>**

1. <u>Net Settlement Amount.</u> The amounts approved by the Court for the Service Award, Incentive Awards, Attorney's Fees and Costs, and settlement administration expenses shall be deducted from the Gross Settlement Amount to determine the amount of the Net Settlement Amount.

2. <u>Allocation of Net Settlement Amount.</u>

    a. <u>Collective Members.</u> All Collective Members shall be paid a portion of Nineteen Thousand Three Hundred Ninety Dollars and Sixteen Cents ($19,390.16) of the Net Settlement Amount pursuant to an allocation Plaintiffs' Counsel will propose to Defendant based on Defendant's payroll data during the Relevant Period already provided to Plaintiff and which will be subject to Defendant's approval but will not be unreasonably withheld. For the purpose of informing Collective Members of their Individual Settlement Payment, the estimated respective Individual Settlement Payment for each Collective Member shall be disclosed to each Collective Member in the Settlement Notice Packet.

    b. <u>Additional Opt-in Plaintiffs.</u> All Additional Opt-in Plaintiffs shall be paid a portion of Four Thousand Five Hundred Fifty-Six Dollars and Eighty Cents ($4,556.80) of

10

the Net Settlement Amount pursuant to an allocation Plaintiffs' Counsel will propose to Defendant and which will be subject to Defendant's approval but will not be unreasonably withheld. For the purpose of informing Additional Opt-in Plaintiffs of their Individual Settlement Payment, the estimated respective Individual Settlement Payment for each Additional Opt-in Plaintiff shall be disclosed to each Additional Opt-in Plaintiff in the Settlement Notice Packet.

3.     <u>Service Award.</u>     From the Gross Settlement Amount, Plaintiffs' Counsel shall seek a Service Award of Three Thousand Dollars and Zero Cents ($3,000.00) for Nadeyah Jones for a ~~full and general~~ release of all her <u>wage</u> claims against Defendant, for her involvement in commencing and discovering the claims represented in this Lawsuit, and for her involvement in settlement negotiations for the benefit of all Eligible Employees. Defendant does not dispute, based on its review of all relevant factors, that the Service Award sought by the Named Plaintiff is reasonable. Any Service Award approved by the Court shall be deemed non-wage compensation in its entirety for Named Plaintiff and shall be reported on an IRS Form 1099. Any amount of the requested Service Award not approved by the Court shall be included as part of the Net Settlement Amount.

4.     <u>Incentive Awards.</u> From the Gross Settlement Amount, Plaintiffs' Counsel shall seek Incentive Awards of Five Hundred Dollars and Zero Cents ($500.00) for Opt-in Plaintiffs Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts (for a total of Two Thousand Dollars and Zero Cents ($2,000.00)) for ~~full and general~~ releases of all their <u>wage</u> claims against Defendant and their involvement in Plaintiff's Pre-Discovery Motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-in Plaintiffs Pursuant to 29

11

U.S.C. § 216(b). Defendant does not dispute, based on its review of all relevant factors, that the Incentive Awards sought by Opt-in Plaintiffs Walker, Fulce, McKinnon, and Roberts are reasonable. Any Incentive Awards approved by the Court shall be deemed non-wage compensation in its entirety for Opt-in Plaintiffs Walker, Fulce, McKinnon, and Roberts and shall be reported on an IRS Form 1099. Any amount of the requested Incentive Awards not approved by the Court shall be included as part of the Net Settlement Amount.

     5.    <u>Attorneys' Fees, Costs, and Settlement Administration Expenses</u>.  Plaintiffs' Counsel shall receive Eighty-Eight Thousand Fifty-Three Dollars and Four Cents ($88,053.04) as an award of attorneys' fees and costs, along with settlement administration expenses not to exceed Three Thousand Dollars and Zero Cents ($3,000.00). Defendant does not dispute that this amount of fee, costs, and expenses sought by Plaintiffs is reasonable. Payment of such attorneys' fees, costs, and settlement administration expenses to Plaintiffs' counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of all obligations by Defendant to pay any person, attorney, expert, law firm for attorneys' fees or costs incurred on behalf of the Named Plaintiff and Participating Plaintiffs. The payment of Attorney Fees, Costs, and settlement administration expenses shall be reported to Plaintiffs' counsel on an IRS Form 1099. Any amount of the Attorney's Fees, Costs, and settlement administration expenses not approved by the Court shall be included as part of the Net Settlement Amount.

**G.**    <u>**Payments to Eligible Employees**</u>

     1.    <u>Timing of Payments.</u>  Within thirty (30) calendar days of the payment by Defendant of the Gross Settlement Amount, the Settlement Administrator will transmit all Settlement Notice Packets to Eligible Employees via First Class U.S. Mail to the last known

address for each Eligible Employee, or such other address provided by the Eligible Employee to the Settlement Administrator.

2. <u>Tax Treatment of the Settlement Payments.</u>   The settlement payments attributed to the Eligible Employees shall be allocated 50 percent (50%) to back wages and 50 percent (50%) to liquidated damages. The back wages shall be subject to all required employee-paid payroll taxes. The liquidated damages shall be treated as non-wage income to the Eligible Employees. The Settlement Administrator shall report the back wage payments to the Internal Revenue Service ("IRS") on IRS Form W-2 and shall report the liquidated damages on IRS Form 1099. The payments made under this Agreement shall not be deemed "compensation" for purposes of any qualified retirement plans or benefit programs, and payment of these amounts does not entitle Plaintiffs to any other plan contributions for their benefit or account.

3. <u>Tax Responsibilities, Tax Advice, and Indemnification.</u>   Other than the withholding and reporting requirements set forth herein, the Participating Plaintiffs shall be solely responsible for any necessary reporting of their respective shares of any federal, state, and/or local income or other tax, if any, on the settlement payments. Named Plaintiff Jones and Opt-in Plaintiffs Walker, Fulce, McKinnon, and Roberts agree and acknowledge that they have not relied upon any advice from Defendant's or Plaintiffs' counsel as to the taxability of the payments received pursuant to this Agreement. As to the payments treated and reported as non-wages, Named Plaintiff Jones and Opt-in Plaintiffs Walker, Fulce, McKinnon, and Roberts agree to hold Defendant harmless for any tax due or owing by them on such payments.

4. <u>Negotiation of Settlement Checks and Retention</u>.   The negotiating of a settlement check by any Participating Plaintiff provides sufficient consideration for his or her release of

claims. Eligible Employees will have one hundred eighty (180) calendar days after the Settlement Notice Packets are mailed in which to deposit or otherwise negotiate their settlement checks. If an Eligible Employee does not negotiate his or her settlement check within one hundred eighty (180) calendar days of issuance, the funds related to the Eligible Employee's settlement payment will be designated as "Unclaimed Funds."

Any funds remaining in the Net Settlement Amount after payment to: (a) Participating Plaintiffs; (b) the Service Award to Named Plaintiff approved by the Court; (c) the Incentive Awards to Opt-in Plaintiffs Walker, Fulce, McKinnon, and Roberts approved by the Court; (d) the Attorney's Fees and Costs to Plaintiffs' Counsel; (e) settlement administration fees; and (f) applicable withheld federal, state and local income taxes withheld from payments to the Participating Plaintiffs, shall be designated as "Unclaimed Funds." All Unclaimed Funds shall be submitted to a mutually designated *cy pres*, to be determined by the Parties, within thirty (30) calendar days of the end of the Administration Period.

**H.    Release of Claims**

1.    Dismissal of Lawsuit and Specific Release by Plaintiffs. Conditioned upon the entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiff Jones hereby agrees to dismiss the Lawsuit with prejudice, and she, Opt-in Plaintiffs Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts, and all Participating Plaintiffs shall release Defendant, including any and all of Defendant's related companies, indirect and direct parents, subsidiaries, joint ventures, owners, partners, and any entity in which Defendant has a controlling interest, any entity that is controlled by Defendant, and their respective officers, directors, affiliates, legal representatives, heirs, predecessors, successors,

14

assigns, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, managers, employees, and agents, along with all judges and court personnel involved in the Lawsuit and their immediate family members (collectively the "Released Parties") from any and all federal, state, and local wage-and-hour claims, right, demands, liabilities, and causes of action of any nature whatsoever, known or unknown, suspected or concealed, presently asserted or otherwise, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and all wage claims based on an express or implied contract as well as all related penalties, interest, liquidated damages, attorneys' fees, and costs. The release of claims applies from October 4, 2021 through the Effective Date. Plaintiffs also knowingly and voluntarily waive their rights, if any, to recover and/or receive any additional damages or other relief for any claim brought by the Department of Labor and/or any state or local agency on their behalf under all federal, state, and local laws which relate to the claims covered by this Agreement. Notwithstanding the foregoing, nothing in this Agreement is intended to operate as, nor shall be construed as, a release or waiver of any rights and/or claims that cannot be released or waived as a matter of law. This release also shall not limit Plaintiffs' ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency as required by law.

2.     ~~Full~~ Release by Named Plaintiff Jones and Opt-in Plaintiffs Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts.   Nadeyah Jones, Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts, individually, on behalf of themselves as well as all heirs, and assignees, in addition to the release provided for under paragraph H(1), do release and discharge the Defendant and all Released Parties of and from any

15

all claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and any other liabilities of any kind, nature, description, or character whatsoever, known or unknown, suspected or concealed, presently asserted or otherwise, that they have or may have against any Released Party arising out of any fact, condition, circumstance, or occurrence whatsoever related to the alleged failure to pay for wages, including, but not limited to, minimum wages and overtime wages. The release under this paragraph applies from the beginning of time until the Effective Date of this Settlement Agreement. This release also shall not limit the rights of Nadeyah Jones, Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency as required by law. The release provided for under this paragraph is a full and general release of claims and shall be interpreted as broadly as the law permits; provided, however, that this release does not release any claims that by law cannot be released.

3.    Release Language on Settlement Checks.  Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check:

> I knowingly and voluntarily release, waive, and discharge CareCentrix, Inc. and all other Released Parties, from any and all federal, state, and local wage-and-hour claims of any nature whatsoever, including claims based on breach of an express or implied contract, that accrued during my employment or while working at CareCentrix, Inc. between October 4, 2021 through the Effective Date, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

16

By negotiating the settlement check, all Participating Plaintiffs are fully bound by the release described in this Agreement.

4.      <u>No Admission of Liability and Non-Admissibility</u>. By entering into this Agreement, Plaintiffs understand that Defendant does not admit, and specifically denies, any liability or wrongdoing as alleged in the Lawsuit, and that Defendant is entering into this Agreement solely for the purposes of avoiding costs of litigation and amicably resolving all disputes and causes of action brought by Plaintiffs against Defendant. Neither this settlement, nor any act performed or document executed pursuant to or in furtherance of this settlement: (a) is or may be deemed to be, or may be used as an admission of, or evidence of the validity of any claim made by Plaintiffs; or (b) is or may be deemed to be, or may be used as an admission of, or evidence of any fault or omission by Defendant or by any Released Party in the Lawsuit or in any proceeding in any court, administrative agency or other tribunal.  This Agreement does not constitute an admission by Defendant or by any Released Party of any violation of any federal, state, local or common law or statute. In addition, this Agreement does not constitute an admission by Defendant or any Released Party of any violation of any contract or other legal duty. Neither this Agreement nor anything in this Agreement shall be construed to be admissible, or shall be admissible, in any proceeding as evidence of wrongdoing by Defendant or any Released Party.

5.      <u>No Publicity/Limited Confidentiality</u>. The Parties and their counsel agree that other than publicly filed settlement documents with the Court, they shall not: (a) publicize the settling of the Lawsuit or the terms of this Agreement to any person, newspaper, magazine, radio or television station, website, Internet site, social media platform, blog site or in any other manner; (b) respond to any press inquiries regarding the settling of this Lawsuit or the terms of this

Agreement; and/or (c) advise any present or former employees of any Released Parties of this settlement or any of the terms hereof, except as required by law, necessary for settlement administration, or as provided for by this Agreement. Notwithstanding the forgoing, nothing in this paragraph shall be read to impact the administration of the settlement called for under Section D of this agreement or prevent Defendant from reporting the settlement as required by law or as part of a required public filing.

**I.      Dismissal of Lawsuit**

1.      Approval Motion. Within twenty-one (21) calendar days of the Effective Date, Plaintiffs will prepare and file a joint motion to approve this Agreement. If for any reason the Court will not approve this Agreement as drafted, the Parties agree to work together in good faith to reform this Agreement as necessary for it to be approved by the Court. To the extent the Court will not approve this Agreement, and the Parties are unable to reform the Agreement despite their good-faith efforts to do so, this Agreement shall be null and void.

2.      Stipulated Order of Dismissal. Upon the Court entering its Approval Order the Lawsuit shall be dismissed with prejudice and final judgment shall be entered, with each Party bearing their own costs except as otherwise provided in this Agreement.  The dismissal of the Lawsuit shall further terminate any and all applicable tolling of any applicable statute of limitations.

**J.      Miscellaneous**

1.      The Parties agree that this Agreement is enforceable in a court of law. The Parties acknowledge that this Agreement constitutes a complete accord with respect to all claims,

demands, or causes of action that have been released by this Agreement and that the Parties' sole remedy for breach of this Agreement is specific enforcement of its terms.

2.     The Parties represent, covenant, and warrant that they have not assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Agreement.

3.     If any court shall determine that any provision herein is unenforceable, the Parties agree that any such provision, or part thereof, shall be reformed and construed consistent with the apparent purpose of the provision in order to avoid its unenforceability or, in the event that reformation is not possible, the provision shall be severed and all remaining provisions shall remain in full force and effect.

4.     Named Plaintiff Jones and Opt-in Plaintiffs Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts wholly rely upon their own judgment in executing this Agreement.   Named Plaintiff Jones has had an opportunity to consult attorneys and understand that if she went forward with a claim, she could have a better result than that achieved here, the same result as achieved here, or a worse result than that achieved here. Named Plaintiff Jones and Opt-in Plaintiffs Brittany Walker, Josephine Fulce, Tamisha McKinnon, and Shaiteryia Roberts have carefully read this Agreement in its entirety and voluntarily and willingly sign the same as a free act. Named Plaintiff Jones executes this Agreement on behalf of herself, all Plaintiffs, and all putative collective members.   It is agreed that it would be burdensome to have all Plaintiffs execute this Agreement.   This Agreement shall have the same force and effect as if each of the Plaintiffs executed this Agreement.

5.      The Parties agree that neither they nor their counsel will solicit or otherwise encourage, directly or indirectly, any of the Plaintiffs or anyone else to object to, or to appeal any final order of judgment of the Court pertaining to, the settlement of the Lawsuit, this Agreement, or the terms of this Agreement.

6.      The Parties agree that this Agreement is to be construed in accordance with the laws of the State of Connecticut.

7.      The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party participated in the drafting of this Agreement.

8.      This Agreement may be executed in counterparts and by facsimile or scanned document, each of which shall be considered equally authentic and together shall be deemed to be one in the same document.

9.      The Parties acknowledge that the promises and covenants contained in this Agreement are the sole and total agreement of the Parties with respect to the matters set forth herein; that there are no covenants, promises, agreements or representations with respect to the matters set forth herein other than as contained in this Agreement; and that in accepting the terms of this Agreement, the Parties have not relied upon any promises, covenants, agreements or representations with respect to the matters set forth herein other than as expressed in this Agreement.

10.     The Parties agree that the terms of this Agreement cannot be changed, altered, modified, amended, or added to except in a writing that specifically refers to this Agreement and

20

is signed by the Parties. The Parties expressly waive application of any local, state, federal, or foreign law, statute or judicial decision allowing verbal modifications, amendments, or additions to a contract notwithstanding an express provision requiring a writing signed by the Parties.

11.     This Agreement shall be inadmissible as evidence in any proceeding, except in an action or proceeding to approve, interpret, or enforce its terms.

**12.     THE PARTIES CERTIFY THAT THEY HAVE READ ALL OF THIS SETTLEMENT AGREEMENT AND FULLY UNDERSTAND ALL OF THE TERMS USED AND THEIR SIGNIFICANCE AND HAVE SIGNED THIS SETTLEMENT AGREEMENT VOLUNTARILY.**

_____          _____
Nadeyah Jones, Individually              Date
and on behalf of Plaintiffs

_____          _____
Brittany Walker, Opt-in Plaintiff        Date

_____          _____
Josephine Fulce, Opt-in Plaintiff        Date

_____          _____
Tamisha McKinnon, Opt-in Plaintiff       Date

_____          _____
Shaiteryia Roberts, Opt-in Plaintiff     Date


CareCentrix, Inc.
Defendant

_____          _____
                                         Date
By: _____

Its: _____

21